**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

CIVIL ACTION NO. 2013-cv-07(WOB-JGW)

N.W., ET AL.                                          PLAINTIFFS

VS.              <u>MEMORANDUM OPINION & ORDER</u>

RANDY POE, ET AL.                                    DEFENDANTS


        This matter is before the Court on plaintiffs' motion
for judgment on the administrative record (Doc. #15).

        The Court held oral argument on this motion on
Thursday, October 24, 2013.  Karen Hoskins Ginn and
Marianne Schaefer Chevalier were present for the
plaintiffs.  Claire Parsons was present for defendants
Boone County Board of Education, Randy Poe, Karen Chesser,
Alissa Ayers, Pam Ecklund, Karen Byrd, Bonnie Rickert,
Steve Kinman, Steve Templeton, and Charles Massey.  David
Wickersham was present for defendants Kentucky Department
of Education, Terry Holiday, and Johnny Collett.  Official
Court Reporter Joan Averdick recorded the proceedings.

        Having made a thorough review of the record and given
careful consideration to the memoranda and oral arguments
of the parties, the Court issues the following memorandum
opinion and order.

*<u>FACTS AND PROCEDURE</u>*

Plaintiff, N.W., is a nine-year-old student who resides in the Boone County, Kentucky school district ("the District"). *See* Administrative Record ("AR") at 294. N.W. displays characteristics of severe apraxia and autism. *Id.* at p. 295. At age three (3), N.W. was enrolled in Boone County Schools. At that time, his Admissions and Release Committee ("ARC") determined that he qualified for special education services due to a developmental delay and placed him at St. Rita School for the Deaf in Cincinnati, Ohio. *Id.* at 294-95.

In June 2010, N.W.'s parents unilaterally enrolled him in Applied Behavioral Services ("ABS") school, also in Cincinnati, Ohio. *Id.* at 296; *see also* Due Process Hearing Transcript Day 1 ("Hearing Transcript – Day 1") at 34. Subsequently, the District convened an ARC on October 21, 2010 to discuss N.W.'s placement options. *Id.* at 27; *see also* Hearing Transcript – Day 1 at 37. At this meeting, the ARC reviewed N.W.'s individualized education program ("IEP") goals and the educational services that he required, but the ARC could not reach an agreement regarding N.W.'s placement. *Id.* at 33-34.

While N.W.'s parents intended on transitioning N.W. back into the District's schools, N.W.'s parents felt that ABS was the best placement for N.W. at that time. *Id.* at

33-34, 296; *see also* Hearing Transcript – Day 1 at 97.  As
a result, the parties entered into a mediated agreement on
November 15, 2010.  *See* Petitioner Ex. 2.  That agreement
provided that the District would pay for the following: (1)
reimbursement for $5453.53 for N.W.'s tuition costs at ABS
from August 19, 2010 through November 30, 2010; (2) a sum
of $5,000 for past transportation costs, attorney fees, and
other past expenses; (3) $1666.66 per month in tuition for
N.W. to attend ABS during the 2010-2011 school year; (4) an
additional $1500 toward ABS summer program tuition; and (5)
reimbursement for N.W.'s transportation costs through the
2010-2011 school year.  *Id*.

     Furthermore, the parties agreed that an ARC would be
convened on or before April 15, 2011 to discuss N.W.'s
transition back to the District's schools by the fall of
2011.  *Id*.  To ensure a smooth transition, the parties
agreed that a board-certified behavioral analyst would lead
the transition team and the District would use the ABS
behavior plan.  *Id*.

     The District missed scheduling the ARC meeting for
April 15, 2011.  *See* Respondent Ex. 23.  Despite repeated
attempts to reschedule the ARC meeting, the earliest the
parties were able to convene the ARC was June 1, 2011.  *Id*.

     While the parties were finally able to schedule the

3

ARC, Erin Elfers, the District's board-certified behavioral analyst, was not present at the first meeting. At that meeting, ABS Director, Lori Watson, advised the ARC that N.W. had make significant strides in a number of areas while at ABS. *See* Respondent Ex. 6. Nonetheless, Pam Eklund, the Director of Special Education for the District, advised that she believed that the District's schools could meet all of N.W.'s needs and that N.W.'s transition back to the District's schools would be appropriate. *Id.* Ultimately, after further discussion regarding N.W.'s transition, the parties agreed to reconvene so that Elfers could attend and further transition plans could be proposed. *Id.*

On June 23, 2011, Elfers and Pam Knapp, the classroom teacher at the District's autism classroom known as the New Haven Elementary School ("New Haven"), went to ABS to review N.W.'s records, observe N.W. in various settings at ABS, and speak with N.W.'s classroom teacher and behavioral consultant. *See* Respondent Exs. 11-12. Based on this visit, Elfers authored a report discussing N.W.'s interactions at ABS and including future steps needed for N.W. to transition to New Haven. *See* Respondent Ex. 11.

On July 20, 2011, the parties convened their next ARC meeting. *See* Respondent Ex. 9. At this meeting, Elfers

presented her preliminary transition plan for N.W., which included the following: "Having speech teacher visit and observe at ABS; have para-educators visit ABS; ABS teacher would visit NHE during am circle period; would need duplicate copy of card box, IEP data sheets, update ABLLS and copy of behavior." *Id*. The notes of this meeting indicate that N.W.'s parents were concerned about N.W.'s transition, but they did not object to the transition plan. *Id*. Ultimately, the parties agreed to reconvene on August 25, 2011 to discuss dates to begin N.W.'s transition into a District school. *Id*.

At the August 25, 2011 ARC meeting, Elfers presented the following transition plan:

> N.W. can visit twice the week before ABS vacation (in mid September); Beginning the following week, [N.W.] would begin a[] half day at NHES, beginning at natural transition time; We will continue to use ABC sheets and graphs to show progress during the transition as well as note positive behavior once [N.W.] comes to us; The length of the transition was not discussed specifically, but I propose half a day for 2 weeks to a month then beginning at a full day at NHES once target behavioral academic and language goals have been established and progress evaluated at meeting.

*See* Respondent Ex. 15.

Elfers' plan also listed the following materials that were still needed:

> (1) We will need all of [N.W.'s] materials,
> behavior plans, progress report, etc. to come
> with [N.W.] once he's full time in [the
> District] as well as a list of reinforcers,
> activities he likes, and potential 'triggers'
> sent to us while [N.W. is] on vacation so we
> can prepare him; (2) [The District] would
> like to send a social narrative about
> changing schools to his parents and ABS with
> pictures of [N.W.'s] classroom that ABS will
> go over with him during 1:1 time in the weeks
> leading up to his first visit in mid Sept.
> This will be prepared after the meeting so we
> can be very specific."

*Id.* Also at that meeting, N.W.'s mother discussed her recent visit to New Haven and voiced her concern that the students at New Haven had lower verbal skills than N.W. *See* Respondent Ex. 14. In response, Pam Knapp, the teacher at New Haven, disputed that the students in her class were less verbally proficient than N.W. *Id.* Additionally, the speech therapist in attendance proposed that N.W. could spend time in a regular classroom to address any possible deficiencies in conversational development. *Id.*

Further, N.W.'s parents stated that, without a more specific transition plan and schedule for N.W. at New Haven, they would reject the District's proposal. *Id.* In response, Pam Knapp outlined the specific afternoon schedule at New Haven. *Id.* Nonetheless, N.W.'s parents rejected the District's offer and ended the meeting. *Id.*

After this meeting, the District sent letters to

6

N.W.'s parents and their counsel requesting that the
parties convene another ARC prior to October 21, 2011 – the
date that N.W.'s IEP would expire.  *See* Respondent Exs. 24,
25.  However, the parents did not respond.  Ultimately,
N.W.'s parents filed a due process request with the
Kentucky Department of Education on October 31, 2011.  *See*
AR at p. 294.

Due to ongoing settlement negotiations, the parties
did not begin the due process hearing until March 12, 2012.
At the due process hearing, N.W. offered the testimony of
Dr. Rena Sorensen, the Director of the Severe Behavior
Treatment Program at Cincinnati Children's Hospital, and
Lori Watson, the Director of ABS.  Dr. Sorensen's work
typically involves transitioning children with severe
negative behavioral disorders such as aggression, self-
injury, fecal smearing, and vomiting.  *See* Hearing
Transcript – Day 2 at 30.

It is undisputed that N.W. does not engage in the type
of severe behavior that Dr. Sorensen's work often involves.
Dr. Sorensen testified that transition plans for children
with less severe behavior usually "go[] way faster because
the child responds really well to new folks and the
behavior plans aren't as complicated."  *Id*. at 25.

Additionally, Dr. Sorensen reviewed Erin Elfers'

transition plan from the August 25, 2011 ARC meeting, and stated that, "It has some of the pieces, but not nearly the detail that I would suggest." *Id.* at 26. However, Dr. Sorensen admitted that since she has never met N.W. nor has she observed ABS or New Haven, she "could not add the details to" the proposed transition plan. *Id.* at 37.

Further, Dr. Sorensen testified that each child's situation must be analyzed individually and that "[t]here's a lot more that goes into transitions than a piece of paper." *Id.* at 17, 42. Dr. Sorensen admitted that the details for a transition plan are often filled in at the ARC meetings and she had not had the opportunity to review the notes of the most recent ARC meeting. *Id.* at 45.

Lastly, Dr. Sorensen admitted that she could not provide an opinion regarding the adequacy of New Haven as a placement for N.W. because she has "no knowledge of that classroom." *Id.* at 36.

N.W. also offered the testimony of ABS Director, Lori Watson. Ms. Watson testified that she believed that N.W. could regress if he transitioned to a new program. *See* Lori Watson Deposition at 72. However, she admitted that she could not offer any opinion regarding N.W.'s potential placement at New Haven. *Id.* at 70. Also, Ms. Watson admitted that she could not provide any opinion regarding

8

whether the District failed to offer N.W. a FAPE or that
the District lacked the resources to educate N.W. properly.
*Id.* Ms. Watson made these admissions because she has never
observed the New Haven autism classroom.   *Id.*

On June 15, 2012, the Hearing Officer issued his
decision. *See* AR at 294.  The Hearing Officer held that
N.W.'s ARC included the required members and the District
did not deny N.W. a FAPE.  *Id.* at 302, 304.  More
specifically, the Hearing Officer found that Ms. Elfers was
not a statutorily-required member of the ARC, and, if she
was, N.W. could not establish how Ms. Elfers' absence at
the June 1, 2011 ARC meeting ultimately caused N.W. any
actual harm.  *Id.* at 302.  Additionally, the Hearing
Officer found that the District's proposed transition plan
did not deny N.W. FAPE because the lack of a transition
plan is a procedural error and N.W. had no evidence that
the transition plan caused N.W. a denial of educational
benefits.  *Id.* at 304.

Accordingly, the Hearing Officer ordered N.W. to
"continue working on a transition plan similar to that
proposed by the [District] during the 08/25/11 ARC meeting
which would have [N.W.'s] transition to [the District's]
schools by the middle of the fall 2012 semester." *Id.* at
308.  However, the Hearing Officer ordered that N.W.'s

9

proper "stay-put" placement was ABS. *Id*. Thus, the Hearing Officer ordered the District to reimburse N.W. for transportation and tuition through the end of the 2012 summer session at ABS.

Both parties appealed the Hearing Officer's decision to the Exceptional Children's Appeals Board ("ECAB"). The ECAB affirmed the Hearing Officer's finding that the District offered a FAPE to N.W. *See* Doc. 16-3. More specifically, the ECAB held that New Haven was an appropriate placement for N.W.; the transition plan offered to N.W. was adequate in all regards, including specificity; and N.W.'s ARC was composed of the required individuals. *See* Doc. 16-3 at 4-14.

However, the ECAB reversed the Hearing Officer's "stay-put" order. *Id*. at 15. Thus, the ECAB held that N.W. was not entitled to compensatory education, attorney's fees, or reimbursement for expenses at ABS through the summer of 2012. *Id*. at 20-21.

Thereafter, N.W. filed the instant action. *See* Doc. 1. At docket call, both parties advised the Court that there would be no additional evidence presented, and it was agreed that the Court would resolve this case based on the administrative record. *See* Doc. 13.

**ANALYSIS**

10

A district court "should make an independent decision based on the preponderance of the evidence but also should give 'due weight' to the determinations made during the state administrative process." *Deal v. Hamilton Cnty. Bd. of Educ.,* 392 F.3d 840, 849 (6th Cir. 2004) (citing *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 206 (1982)).

"Stated succinctly, a district court 'may set aside administrative findings in an IDEA case only if the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both.'" *Woods v. Northport Pub. Sch.,* 487 F. App'x 968, 973 (6th Cir. 2012) (quoting *Bd. of Educ. of Fayette Cnty., Ky. v. L.M.,* 478 F.3d 307, 312–13 (6th Cir. 2007)).

## A. Transition Plan

First, N.W. argues that the District failed to develop, implement, and/or revise an appropriate individual education plan ("IEP") for N.W. because the District failed to offer an appropriate plan to transition N.W. back to a District School. *See* Doc. 15-1 at pp. 4–9.

"A finding of procedural violations does not necessarily entitle [a plaintiff] to relief." *Deal*, 392

F.3d at 854 (citation omitted).  "Only if a procedural violation has resulted in substantive harm, and thus constitutes a denial of a FAPE, may relief be granted." *Id*.

N.W. asserts that, "Because the District's transition plan would deny N.W. the opportunity to receive educational benefits, the insufficient transition plan constitutes a substantive error." *See* Doc. 15-1 at p. 7.  However, N.W. fails to establish how the allegedly deficient transition plan caused him a denial of educational benefits.

In fact, as noted by both the Hearing Officer and the ECAB, the situation presented here is akin to that seen in *Park Hill Sch. Dist. v. Dass*, 655 F.3d 762 (8th Cir. 2011). In *Dass*, the plaintiffs, two autistic children, were unilaterally placed in a private school in 2004 by their parents.  *Id*. at 764.  The parents filed a due process complaint but eventually settled that complaint, with the school district agreeing to pay the plaintiffs' private school tuition through July 2005.  *Id*.

In 2005, the school district, with substantial input from the parents, developed a new IEP for the plaintiffs for the 2005-2006 school year, placing the plaintiffs in a district school.  *Id*.  However, the parents objected and filed another due process complaint.  *Id*.  Ultimately, the

12

administrative officers and the District Court found that
the plaintiffs were denied a FAPE because the school
district failed to offer an adequate plan for the
plaintiffs to transition from their private school back to
a district school.  *Id.* at 765.

Reversing the District Court, the Eighth Circuit held
that, "The absence of IEP provisions addressing transition
and behavior issues does not, standing alone, violate the
IDEA or deprive the disabled child of a FAPE."  *Id*. at 766
(citations omitted).  "In other words, as numerous cases
confirm, the absence of these provisions in the 2005 IEPs
was at most a procedural, not a substantive error."  *Id*.
(citations omitted).

Further, the Court in *Dass* stated that if the
plaintiffs "had attended a District school, and if the
transition services or behavior interventions the District
actually provided were alleged to deny a FAPE, that would
raise an issue of substantive error."  *Id*. at 766
(citations omitted).  "But in a case where the Parents
refused to give the District an opportunity to implement
the IEPs and private school reimbursement was the issue,
the [administrative officers'] failure to recognize this
critical distinction was an error of law."  *Id*. at 766-67
(citations omitted).

Additionally, the Court found that the administrative officers' failure to consider a transition plan formulated by the District in August 2005, prior to the start of the 2005-2006 school year, was an error of law. *Id*. at 767. The *Dass* Court held that since "[t]here was time for ongoing planning," the administrative officers' unwarranted assumption that the alleged omission of a sufficient transition plan compromised the students' right to an appropriate education was improper. *Id*.

Here, N.W.'s only expert, Dr. Rena Sorensen, testified that she believed that the transition plan presented by Erin Elfers at the August 25, 2011 ARC meeting "has some of the pieces, but not nearly the detail that I would suggest." *See* Hearing Testimony – Day 2 at 26. However, Dr. Sorensen admitted that since she has never met N.W. nor has she observed the environments at ABS or New Haven, she "could not add the details to" the proposed transition plan. *Id*. at 37.

Additionally, Dr. Sorensen testified that "[t]here's a lot more that goes into transitions than a piece of paper." *Id*. at 17, 42. Accordingly, even N.W.'s own expert admitted that a transition plan is a work-in-progress that is typically filled out with details through ARC meetings and that she would not be able to add any details to Ms.

14

Elfers' transition plan. *Id*. at 37, 45.

Nonetheless, even if the Court were to assume that the transition plan presented by Elfers was insufficient, there was no substantive harm because N.W. never actually transitioned to a District school and there was still sufficient time for the parties to continue fleshing out N.W.'s transition plan.

While N.W. asserts that Pam Eklund insisted on an end date for the transition, N.W. has offered no such date. *See* Doc. 17 at p. 5. Moreover, both the notes of the August 25, 2011 ARC meeting and the testimony of N.W.'s witness, Lori Watson, state that N.W. was not to begin schooling at a District school until one month after the August 25, 2011 ARC meeting. *See* Respondent Ex. 14; *see also* Hearing Transcript – Day 2 at 103. Thus, "[t]here was still time for ongoing planning," and this Court rejects N.W.'s unwarranted assumption that the alleged omission of a sufficient transition plan compromised N.W.'s right to a FAPE. *See Dass*, 655 F.3d at 767.

Further, "[t]he IDEA was not intended to fund private school tuition for the children of parents who have not first given the public school a good faith opportunity to meet its obligations." *Id*. at 767-68. The minutes of the ARC meetings indicate that the District participated in

each ARC meeting in good faith with the intention of providing N.W. with a learning environment that could meet all the needs of N.W.'s IEP.

Moreover, "there is no requirement in the IDEA for a 'transition plan' when a student moves from one school to another." *E. Z.-L. ex rel. R.L. v. New York City Dep't of Educ.*, 763 F. Supp. 2d 584, 598 (S.D.N.Y. 2011), *aff'd sub nom.*, *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2802 (U.S. 2013) (citation omitted). "Rather, the IDEA requires such a plan where a student will be transitioning from school to post-school (i.e., adult) activities, *see* 20 U.S.C. § 1414(d)(1)(A)(i)(VIII)(aa)-(bb); 34 C.F.R. § 300.43(a), a situation inapplicable to this action." *Id*.

Therefore, N.W. has failed to establish that the transition plan in question was inappropriate or insufficient.  However, even if this Court were to assume that the transition plan in question was insufficient, N.W. has not established this deficiency caused him any substantive harm nor has he established that he was entitled to such a transition plan under IDEA.

## B. Admission and Release Committee

Next, N.W. asserts that the District failed to ensure that N.W. had a proper ARC membership because Erin Elfers was absent from the June 1, 2011 ARC meeting.  *See* Doc. 15-1 at pp. 9-10.  N.W. asserts that, pursuant to the mediated agreement of November 15, 2010, the District was to provide "a board certified behavioral analyst to lead N.W.'s transition team to ensure a smooth transition."  *Id*. at p. 9 (citing Petitioner's Exhibit 2).

The absence of a member of the ARC is a procedural error.  *See Deal*, 392 F.3d at 860 (stating that the absence of a regular school teacher at the ARC is a procedural error).  Thus, N.W. must again establish that this procedural error caused him substantive harm in order for relief to be granted under the IDEA.  *Id*. at 854.

While it is undisputed that Ms. Elfers was not present at the first ARC meeting, it is also undisputed that Ms. Elfers was present at the June 20, 2011 and August 25, 2011 ARC meetings.  As determined above, N.W. cannot establish that any deficiency with his transition plan resulted in substantive harm.  The August 25, 2011 ARC meeting notes show that Ms. Elfers offered a transition plan and suggested that transition plan continue through mid-September.  *See* Respondent Ex. 14.

Thus, even assuming that Ms. Elfers was a required

17

member of the ARC – which the District disputes – N.W. has
not proven that Ms. Elfers' absence at one ARC meeting
resulted in substantive harm.  Therefore, N.W. is not
entitled to relief under the IDEA on this basis.

### C. Placement Decision

Next, N.W. asserts that the District, in recommending
New Haven, failed to make an appropriate placement decision
for N.W.  *See* Doc. 15-1 at p. 10.

> Since "[a]n 'appropriate' public education
> does not mean the absolutely best or
> 'potential-maximizing' education for the
> individual child [,]" *Gregory K. v. Longview
> School Dist.,* 811 F.2d 1307, 1314 (9th Cir.
> 1987) (citing *Rowley,* 458 U.S. at 197 n. 21),
> a court's review "must focus primarily on the
> District's proposed placement, not on the
> alternative that the family preferred." *Id.*
> That proposed placement must be upheld "if it
> was reasonably calculated to provide [the
> disabled child] with educational benefits."
> *Id.*

*Tucker v. Calloway Cnty. Bd. of Educ.*, 136 F.3d 495, 505
(6th Cir. 1998).

The ECAB opined that the District's proposed placement
at New Haven was appropriate.  *See* Doc. 16-3 at p. 4.  More
specifically, the ECAB found the following:

> The proposed classroom had six students, with
> one teacher and two para-educators.  The
> certified special education teacher, Pam
> Knapp, had nineteen plus years of experience
> in special education, including four years as
> an elementary school autism teacher.  Her
> certification was in trainable mentally

handicapped and she had a Masters Degree in
special education.   The proposed classroom
was specifically designed for autistic
children with a highly structured system.
Many of the same teaching methods and
reinforcements the [student's] ABS classroom
offered were used in the proposed classroom.
Ms. Knapp had a plan to address any possible
regression based on the individualized needs
of each student in the class.  She was going
to continue the ABS reinforcements with the
student to maintain his progress behaviorally
and then gradually increase his demands as he
became more successful.

The classroom proposed at New Haven would
have provided not only the minimum, but in
fact an educational opportunity above that
required to create FAPE.  It nearly mirrored
the education provided at the private ABS. In
addition, it offered a certified special
education teacher, para-educators, and on-
site resources in occupational therapy,
behavioral issues, and speech therapy.

*See* Doc. 16-3 at pp. 5,6.

Rather than attack New Haven as an inappropriate
placement, N.W. argues that the District could not have
proposed an appropriate placement for N.W. because the
District did not have "any real knowledge or understanding
of N.W.'s needs." *See* Doc. 15-1 at p. 13.  However, that
argument is merely another way for N.W. to argue that the
District failed to implement a proper transition plan.

The only attack that N.W. actually makes on New Haven
is his assertion that the students at New Haven were
primary non-verbal and placing N.W. in that environment

19

would likely cause regression in N.W.'s verbal skills.  *See* Doc. 15-1 at p. 12.  N.W.'s assertion that the students at New Haven were primarily non-verbal was based strictly on N.W.'s mother's forty-five (45) minute visit to New Haven. *See* Hearing Transcript – Day 1 at 190-91.

This assertion is disputed by Pam Knapp, the teacher in the New Haven classroom, who testified that many of children in her classroom were as verbal as or more verbal than N.W.  *See* Hearing Transcript – Day 2 at 96-99.  The Sixth Circuit has found an IDEA claim insufficient where the only testimony that a school district has failed to provide a FAPE is a parent's opinion.  *See Kenton Cnty. Sch. Dist. v. Hunt*, 384 F.3d 269, 282-82 (6th Cir. 2004).

Further, N.W.'s expert, Dr. Rena Sorensen, admitted that she could not provide an opinion regarding the adequacy of New Haven as a placement for N.W. because she has "no knowledge of that classroom."  *See* Hearing Transcript – Day 2 at 36.  Moreover, Lori Watson, the owner and director of ABS, admitted that she could not offer any opinion regarding N.W.'s possible placement at New Haven. *Id*. at 70.  Additionally, Ms. Watson admitted that she could not provide any opinion regarding whether the District failed to offer N.W. a FAPE nor could she opine as to whether the District lacked the resources to educate

20

N.W. properly.  *Id*.

Accordingly, N.W. has provided no basis upon which this Court could find that the environment at New Haven was not reasonably calculated to provide N.W. with educational benefits.  Moreover, affording "due weight" to the administrative findings – as this Court must – N.W. has not established that the District's offer of placement at New Haven was inappropriate.

### D. <u>Continuum of Placement Options</u>

Next, N.W. argues that the District failed to ensure a continuum of placement options were available to N.W. as required by 34 C.F.R. § 300.115.  *See* Doc. 15-1 at 13-15.

However, N.W. failed to make this claim in the administrative proceedings below.  Accordingly, N.W. did not exhaust this claim, and, thus, it is not properly before this Court.  *See  A.K. ex rel. J.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 679 n. 7 (4th Cir. 2007) ("Regardless of whether the district court addressed this issue, because the issue was apparently never raised to the hearing officer, we do not address it."); *David D. v. Dartmouth Sch. Comm.*, 775 F.2d 411, 424 (1st Cir. 1985) ("[F]or issues to be preserved for judicial review they must first be presented to the administrative hearing officer."); *Horen v. Bd. of Educ. of City of Toledo Pub.*

*Sch. Dist.*, 655 F. Supp. 2d 794, 806 (N.D. Ohio 2009) ("Parties have the duty to preserve error in an administrative hearing.").

Additionally, it should be noted that, after the District pointed out this flaw, N.W. did not address his failure to exhaust this claim in his reply brief.

Therefore, N.W.'s claim that the District failed to ensure a continuum of placement options were available to N.W. is dismissed for failure to exhaust.

### E. "Stay-Put" Placement

Lastly, N.W. asserts that the ECAB erred in concluding that ABS was not N.W.'s appropriate "stay put" placement. *See* Doc. 15-1 at pp. 16-21.

34 CFR 300.518(a) provides, in relevant part, that: "[D]uring the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing . . . unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement." *See also* 20 U.S.C. § 1415(j).

> [T]he term "then current educational placement" must be accorded, its plain meaning. Because the term connotes preservation of the status quo, it refers to the operative placement actually functioning

22

> at the time the dispute first arises. If an
> IEP has been implemented, then that program's
> placement will be the one subject to the
> stayput provision. And where, as here, the
> dispute arises before any IEP has been
> implemented, the "current educational
> placement" will be the operative placement
> under which the child is actually receiving
> instruction at the time the dispute arises.

*Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625-26 (6th Cir. 1990).

Based on the well-reasoned analysis of the Hearing Officer, the Court finds that the Hearing Officer's finding of "stay put" shall be reinstated.  N.W.'s operative placement under which he was actually receiving instruction at the time the dispute arose was ABS.

Accordingly, the ECAB's denial of "stay put" is reversed.


Therefore, the Court being advised,

**IT IS ORDERED THAT:**

1. Pursuant to the foregoing analysis, plaintiffs' motion for judgment on the administrative record (Doc. #15) is **GRANTED in part** and **DENIED in part;**

2. In accordance with the Hearing Officer's finding of "stay put," the District shall reimburse N.W.'s parents for 5.5 hours per day of tuition at ABS, along with transportation costs, from

October 31, 2011 until the end of the judicial

proceedings in this Court, (*see J.E. v. Boyertown*

*Area Sch. Dist.*, 807 F. Supp. 2d 236, 239 (E.D.

Pa. 2011) and the cases cited therein); and

3. A judgment will enter concurrently herewith.


This 4th day of November, 2013.




Signed By:

**William O. Bertelsman** WOB

**United States District Judge**